## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| DARRIN TAGGART, | |
| Petitioner, | Case No. 1:11-cv-00394-REB |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **MEMORANDUM DECISION AND ORDER** |
| Respondent. | |

Pending before the Court is Darrin Taggart's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny his claim for Supplemental Security Income benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

The Petitioner Darrin Taggart ("Petitioner") first applied for Social Security disability benefits in January of 2006. That application was initially denied on June 6, 2006 and Petitioner did not appeal. On June 21, 2007, Petitioner filed a second application for Supplemental Security Income. Petitioner's second application was initially denied and, again, denied on reconsideration. Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On July 21, 2009, ALJ Michael Kilroy held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Debra Young Irish, appeared and testified. (AR 65). A

**MEMORANDUM DECISION AND ORDER - 1**

vocational expert, Anne Aastum, and a medical expert, James Bruce, also testified at the hearing. *Id*. Petitioner requested that his January 2006 application be reopened and amended his onset date to December 16, 2004. AR 73-74.

At the time of the hearing before the Administrative Law Judge, the Petitioner was 47 years old. He had completed some college classes and had work experience as an electronics mechanic, a computer programmer, and a network control operator. AR 207, 246.

On November 24, 2009, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. AR 15-25. Petitioner requested review from the Appeals Council on November 24, 2009. AR 2. On July 27, 2011, the Appeals Council denied Petitioner's request for review (AR 2-3), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action, arguing that the ALJ failed to give appropriate weight to the opinions of Petitioner's treating physician and failed to properly support his finding that Petitioner's allegations regarding excess pain were not credible. *See* Pet.'s Br., pp. 6, 11 (Dkt. 16). Petitioner requests that the Court reverse the ALJ's decision and grant Petitioner benefits or, alternatively, remand the case for further proceedings. *See id*. at p. 15.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g).  That is, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.*  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.      Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since December 16, 2004, the alleged onset date.  (AR 17).

**MEMORANDUM DECISION AND ORDER - 4**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: pain disorder, depression, anxiety and post laminectomy syndrome with lumbar radiculopathy.  (AR 17).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment.  AR 18.

**MEMORANDUM DECISION AND ORDER - 5**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work, except that Petitioner: must be allowed to alternate between sitting/standing/walking for an eight hour workday, including sitting only up to 30 to 60 minutes at one time, standing only up to 30 minutes at one time, and sitting only up to 30 to 60 minutes at one time; he should crawl seldom, if at all, no climbing ladders or scaffolds, and all other postural activities limited to occasional; he should avoid concentrated exposure to extreme temperatures, primarily cold temperatures, as well as vibrations, hazards, and uneven, rough, wet, and slippery surfaces; he should not have dealings with large numbers of people at any one time or a constant stream of smaller numbers, and he cannot work in a job that has a high, constant focus throughout an eight hour workday, nor a job that has high, constant stress components throughout an eight hour workday.  AR 20.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such

**MEMORANDUM DECISION AND ORDER - 6**

alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that Petitioner is unable to perform any past relevant work.  AR 23.  However, considering Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Petitioner] can perform" — for example, injection molding machine tender, survey worker, and data entry clerk.  AR 14.

**B.     Analysis**

Petitioner argues that the ALJ failed to give appropriate weight to the opinions of Petitioner's treating physician and failed to properly support his finding that Petitioner's allegations regarding excess pain were not credible.  *See* Pet.'s, pp. 6, 11 (Dkt. 16).  The Court will first address the credibility issue.

1.     Petitioner's Credibility

The ALJ found that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment."  AR 23.

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether there is "'objective medical

**MEMORANDUM DECISION AND ORDER - 7**

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant has presented such evidence, and there is no affirmative evidence of malingering, then the ALJ must give "'specific, clear and convincing reasons'" in order to reject the claimant's testimony about the severity of the symptoms.  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  In evaluating the claimant's testimony, the ALJ may use "'ordinary techniques of credibility evaluation.'"  *Turner*, 613 F.3d at 1224 n. 3 (quoting *Smolen*, 80 F.3d at 1284).  For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Lingenfelter*, 504 F.3d at 1040.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.  *See Turner*, 613 F.3d at 1225; *Valentine*, 574 F.3d at 693.  *See also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

Respondent here does not dispute that there is "reliable evidence" supporting Petitioner's "allegations that he experienced some limitations," but argues that the evidence does not support Petitioner's allegations that he was incapable of working.  Resp.'s Br., p. 7 (Dkt. 17) (citing AR 17-24).  In making his credibility assessment, the ALJ noted that Petitioner's treating physician, Dr. Dubose, reported on "a *possibility* of malingering" and cited to a reviewing physician's similar report to find that Petitioner's allegations of severe and disabling pain may be overstated in order "to increase his chances of obtaining benefits."  AR 23 (emphasis added).

Dr. Dubose noted in relation to an appointment in January of 2006 that he received "mixed messages" from Petitioner and the representative for the ABC dorsal stimulator adjustor.

**MEMORANDUM DECISION AND ORDER - 8**

Dr. Dubose reported that the ABC representative "states he was able to decrease [patient's] groin pain but when speaking with the patient, he states it was unchanged."  AR 308.  Dr. Dubose then noted that "I'm beginning to wonder if [Petitioner] may be malingering."  AR 308.  However, that one notation in early 2006 is followed by three years of steady treatment of Petitioner and no other comments about the possibility of malingering.  Significantly, Dr. Dubose, on two occasions, provided assessments to the Social Security Administration supporting Petitioner's application for disability benefits, with nary a mention nor suggestion of malingering.  *See* AR 258-59; 397.

The other record evidence about the possibility of malingering comes from an examining physician's report.[1]  In September 2007, James Read, Ph.D., conducted a consultative examination, but it was focused on Petitioner's psychological complaints.  AR 267-274.  Dr. Read reported that on the Structured Inventory of Malingered Symptomatology ("SIMS"), Petitioner's profile was "highly consistent with the *possibility* of malingering" AR 19, 23, 271 (emphasis added).  Although Petitioner's score of 33 was above the "cut off" for malingering (anything over 14) and " the test results suggest highly that there is a genuine possibility [Petitioner] is endorsing more symptoms than is truly the case and may be malingering," (AR 271), Dr. Read's review was focused on Petitioner's claim of disability due to psychological

---

[1] Respondent also points out that Dr. Maximo Callao, a reviewing physician who completed a Mental Residual Functional Capacity Assessment, included a note that "SIMS testing profile is consistent with malingering."  AR 277; *see* Resp.'s Br., p. 9.  Dr. Callao noted not just this, but also other parts of Dr. Read's report, such as the diagnoses of "pain disorder, depressive disorder, anxiety disorder, and R/O [rule out] malingering."  AR 277.  The ALJ did not point to these notes as support for his credibility determination and Dr. Callao's notations rely upon Dr. Read's assessment, which the Court has discussed in detail elsewhere. Additionally, Dr. Callao relied on other notes, such as one that Petitioner's "persistence depends on pain level" in assessing a sedentary work level.  AR 277.

**MEMORANDUM DECISION AND ORDER - 9**

problems.[2]  His diagnostic impression at Axis I was: (1) pain disorder associated with both

physiological factors and a general medical condition, (2) depressive disorder, not otherwise

specified, (3) anxiety disorder, not otherwise specified, and (4) rule out malingering.  AR 272.

Dr. Read also stated: "Prognosis appears to be poor due to chronic pain."  *Id.*  His concluding

discussion explained that he has "no doubt that [Petitioner] has some pain, but he may be over

endorsing the difficulties that he has with memory and with and other psychiatric symptoms as

measured by the SIMS."  AR 273.  Although Dr. Read addressed the pain disorder, the focus of

his comment on the possibility of malingering appears to be more targeted toward certain mental

conditions than Petitioner's pain.

Additionally, the ALJ noted at the hearing that "[o]rdinarily, we don't have psychologists

do the pain analysis."  AR 113.  The medical expert testifying at the hearing, Dr. James Bruce, a

psychologist, AR 107, discussed Dr. Read's report and testified, in his opinion, that Dr. Read

had "a relatively low confidence level in the [SIMS]" and that it is "good psychological practice

to make diagnoses based on observation and preferably ongoing treatment."  Dr. Bruce explained

that Dr. Read did not make a diagnosis of malingering, and that it is "poor psychological practice

to make diagnoses based on a test result."  AR 110.

---

[2]  Dr. Read performed a "mental status examination" (AR 267) and noted the subtest scores in the following categories: neurological impairment, affective disorders, psychosis, low intelligence, and amnestic disorders and found the results of Petitioner's SIMS *in these areas* "are highly suspicious and are not consistent with someone who is completely honest and open about their presentation of symptoms."  AR 271.  Again, however, this was in relation to Petitioner's mental health symptoms.

**MEMORANDUM DECISION AND ORDER - 10**

The Court agrees with an Oregon federal court that "a suspicion of malingering does not rise to the level of an affirmative demonstration" of malingering.  *Bagby v. Astrue*, No. 10-1581-PK, 2012 WL 1114298, * 4 (D.Or. Feb. 7, 2012).  *See also Yang v. Comm'r of Soc. Security*, No. 10-17690, 2012 WL 2673128, *1 (9th Cir. July 6, 2012)[3] ("Although Dr. Chu noted in his record to 'R/O [rule out] malingering [.]' this notation is not a clear, affirmative diagnosis that Yang was actually malingering.").  For these reasons, the Court is of the view that the clear and convincing standard applies to the credibiltiy assessment here because limited discussion about the possibility of malingering does not rise to the level of an affirmative showing of malingering. However, under either standard, the ALJ did not properly support his credibility determination. The ALJ relied first upon the possibility of malingering as to his pain and associated physical limitations because of chart notes in Dr. Dubose's and Dr. Read's records.  However, that "possibility" became a rejected hypothesis in Dr. Dubose's treatment of Petitioner, and Dr. Read's conclusions were directed at possible mental health limitations, not physical limitations.

The ALJ also relied on Petitioner's activities of daily living and his view that Petitioner's condition "waxes and wanes."  AR 23.  Specifically, the ALJ considered that the "objective medical evidnece of record also clearly shows that [Petitioner's] condition waxes and wanes, and such occurrences of debilitating pain are short-lived and infrequent."  AR 23.  Although the medical records do contain statements showing that Petitioner's pain levels varied throughout his

---

[3]  Both cases are cited as persuasive authority only.  Ninth Circuit Rule 36-3(b) provides: "Unpublished dispositions and order of this Court issued on or after January 1, 2007 may be cited to the court of this circuit in accordance with FRAP 32.1."  However, Ninth Circuit Rule 36-3(a) provides:  "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

**MEMORANDUM DECISION AND ORDER - 11**

years of treatment, he consistently reported significant pain and consistently sought treatment for

that pain, as show in this summary:

| Date | Provider | Notation |
|------|----------|----------|
| 3/24/05 | Dubose/ Rambow | "His leg symptoms have improved a bit and his back pain is actually much better.  He has returned to work and is virtually off from all of his pain medications.  He is requesting an epidural to see if this would settle down his leg pain."  AR 301. |
| 4/08/05 | Dubose/ Rambow | "The epidural that was done did nothing for his pain. At this point, he is very concerned."  "He is walking with a very antalgic gate."  "I will add in methodone . . . to see if we can alleviate some of his pain."  AR 302. |
| 11/07/05 | Dubose | "We have not seen him in several months."  In that time "he underwent a second spinal fusion."  "His low back pain is significantly better, but his leg pain is continuing to be problematic."  "He would like to go back to work."  AR 303. |
| 11/22/05 | Dubose | Patient "achieved better pain control and coverage after" reprogramming session with dorsal column stimulator.  AR 304. |
| 11/23/05 | Dubose | Patient received at least 70 to 80 % improvement with stimulator and it was "especially effective for the foot and leg pain."  AR 305. |
| 12/20/05 | Dubose | "He is complaining of pain around the generator site.  Overall, the dorsal column stimulator seems to be covering his pain relatively well."  AR 306. |
| 1/04/06 | Dubose/ Rambow | "Overall, the dorsal column stimulator seems to be covering his pain relatively well.  He states the pain at the generator site radiates around into the groin.  It is worse when he stands and typically goes away with rest."  AR 307. |
| 1/19/06 | Dubose | Patient "has returned to work, and has actually done relatively well.  There is one small spot that is being missed by the stimulator."  The stimulator was reprogrammed and "patient achieved better pain control and coverage after this session." AR 309. |
| 2/22/06 | McMullen | "[H]is spinal cord stimulator is providing good pain relief".  AR 310. |

**MEMORANDUM DECISION AND ORDER - 12**

| 3/14/06 | Dubose/ Rambow | "[H]e states he is having increasing pain in his lumbar spine and along his right thigh.  This tends to come and go and there are certain days when the pain will not occur.  He again cannot give me any causative factors."  "I would like him to pay attention to his back pain and leg pain to see if it may be relate to position, activity, or possibly his stimulator."  "He is pushing for disability and has filed." AR 311. |
|---|---|---|
| 3/17/06 | Dubose/ Rambow | "At this point he is stable.  He seems very somatically focused and probably needs to not focus so much on his pain." AR 313. |
| 4/05/06 | Dubose/ Rambow | "He doesn't believe he can go back to work and now is moving forward with disability."  "He is not getting as much coverage of the spinal cord stimulator as he would like.  He has had [it] reprogrammed on several occasions and it does help but at certain times it'll actually aggravate the pain."  Dr. Dubose increased Petitioner's pain medication and noted "[hopefully this will help with the pain he is having in his legs".  "I will support him in his decision for disability. "I'm not sure what else we can do for him.  AR 314. |
| 5/04/06 | Dubose/ Rambow | "He is not getting as much coverage of the spinal cord stimulator as he would like.  He has had it reprogrammed on several occasions and it does help but at certain times it'll actually aggravate the pain."  AR 315.  Pain medicine was increased to help with pain in legs. |
| 5/18/06 | McMullen | "He [continues] to have some low back pain with left leg radiating pain. . . . He reports that after a [stimulator] reprogramming session his pain improves for approximately a week but then returns." AR 316. |
| 6/19/06 | Dubose | "Despite aggressive treatment, the patient continues to have significant pain.  He has had his stimulator reprogrammed multiple times and it covers the mild to moderate pain, but after he has been up on his feet for long periods of time he has severe hurting in both feet.  This is only modestly covered by narcotics.  AR 317. |
| 7/05/06 | Dubose | "He continues to have significant pain.  When he wakes up, it is a 5/10.  By the end of the day, it is a 9/10."  "Clearly, the patient is not getting the kind of coverage in his feet with |

**MEMORANDUM DECISION AND ORDER - 13**

| | | |
|---|---|---|
| | | a dorsal column stimulator that he would really like.  He does have good light coverage, and good back coverage."  AR 318. |
| 10/03/06 | Dubose/ Rambow | "He continues to have fairly severe low back pain with pain down both lower extremities.  He states that he has had some improvement and is learning to adapt to his disability."  AR 319. |
| 12/06/06 | Dubose | Tried to decrease his pain mediation "but he had a lot of problems with break through pain.   . . .He notices that he has a lot of breakthrough pain in the evening after being active.  He has not had his dorsal column stimulator reprogrammed in about six months.  He tells me that it is actually irritating when he turns It on.  Previous to this, it had been quite effective."  AR 320. |
| 1/03/07 | Dubose | On his last visit, he had a reprogramming of his dorsal column stimulator. It seems to be working much better. . . . Clearly, the patient is making some headway."  AR 321. |
| 2/01/07 | Dubose | "His pain is still a problem, and he still has bad days, but overall he is doing okay."  AR 322. |
| 02/15/07 | McMullen | "And he is struggling with pain today but he has had some teeth work done. . . . The stimulator is working relatively well and does cover quite a bit of his low back pain."  AR 323. |
| 3/15/07 | Dubose | "Despite aggressive pain management, the patient continues to be almost completely debilitated because of pain.  He is basically bed bound.  He can't set, stand, or have any type of activity.  Any increased activity for a prolonged time starts the pain cycle, which is severe and unremitting.  He is using his dorsal column stimulator all the time.  It does help." A zero gravity law chair "seems to decompress his spine and allows him some comfort.  Once this occurs, the patient's able to be more active, and his activity of daily living, is better with a longer period between pain cycles."  AR 325. |
| 4/18/07 | Dubose | "He notices that his pain is a little bit better with [sleep]."  AR 326. |
| 6/01/07 | McMullen | "His pain continues to be well controlled on the Methadone and Norco for breakthrough pain. . . .He does continue to be as active as possible.  He is currently rating his pain 6-7/10 on the VAS [Scale], and he does state this is quite tolerable." |

**MEMORANDUM DECISION AND ORDER - 14**

| | | AR 327. |
|---|---|---|
| 6/29/07 | Pain Center | "He does report his back pain has been well controlled with the use of the spinal cord stimulator, but the medications are used [as] a supplemental dosing."  AR 328. |

The chart above contains a sample of the notations from Petitioner's many visits to the Idaho Pain Center during 2005-07.  A central theme in these records is that Petitioner has good days and bad days with his pain problems.  *See, e.g.*, AR 329.  However, he consistently sought treatment for his pain and attended regular check ups, sometimes visiting the pain center just a few days or weeks apart.  Although his stimulator often worked to help relieve pain, he went in for several reprogramming sessions to help resolve spotty coverage.  *See, e.g., id.*[4]  The ALJ proposes that such a pattern implies a lack of credibility, but the far more likely evidence of a lack of credibility would be a record that shows repeated and unvarying claims that the pain was always at the same debilitating level, with never an instance of relief or lessening of the pain.

Other medical evidence supports Petitioner's claim that he will miss work more than four times a month due to the pain (a claim Dr. Dubose agrees with).  AR 259.  Petitioner visited the Idaho Pain Center less frequently, but still fairly regularly in 2008, for "pain primarily in his back and down his left lower extremity."  AR 336-44.  Physical therapy helped, but Petitioner was still "trying to cope with the pain and decreased mobility."  AR 336.  In early 2009, Petitioner purchased a recumbent bike and was "moving better" and experienced help with his pain through physical therapy.  AR 347.  However, his primary care center still diagnosed

---

[4]  A consultation note in November 2007 by neurologist Kenneth Little stated that Petitioner's lumbar spine had a "stable alignment" and "[t]here is no significant central spinal canal stenosis or lateral recess narrowing," but Petitioner does have "a mild degree of spondylotic change."  AR 331.  Dr. Little suspected that "with adequate parasthesias coverage, [Petitioner] will experience pain relief," however "there are no guarantees."  AR 332.

**MEMORANDUM DECISION AND ORDER - 15**

chronic pain and his records do not show uniform and consistent improvement.  AR 348; 386-96.

Petitioner sometimes stated his pain was somewhat less, AR 348, or that he was "having a bad

day" with pain, AR 355.  His discharge note from physical therapy on April 16, 2009, reported

that Petitioner consistently attended his appointments and "his pain has reduced from a 4-9/10 to

2-6/10 with more time at the lower ranges of pain."  AR 365.  "His pain rating, ROM, strength,

endurance, and functional abilities have all imiproved."  *Id.*

Additionally, the Idaho Pain Center records from 2009 indicated that with diet and

exercise Petitioner was able to "be on his feet longer and tolerate the pain that daily activities

bring" (AR 370) and, at times, was "feeling better" (AR 346), but the records also demonstrate

that Petitioner still experienced pain, at varying levels depending on his activities, and had "good

days *and* bad days."  AR 380 (emphasis added); *see also* AR 372-83.

As an additional reason for discounting Petitioner's testimony, the ALJ found that his

activities "are not consistent with his allegations of severe and disabling pain, including

camping, taking a cruise vacation, and riding an exercise bike 30 minutes daily."  AR 23.  The

ALJ may discredit a claimant's testimony when the claimant reports participation in everyday

activities indicating capacities that are transferable to a work setting.  *See Morgan v. Comm'r*

*Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Fair*, 885 F.2d at 603.  Considering the

details Petitioner provided about these few activities, they are not the type that appear

transferable to a work setting.  Petitioner testified that he camped in 2009, but most of the time

sat in a chair in the shade or laid in the tent and that his friend pitched the tent and did the

cooking.  AR 93.  Petitioner also went on a three night cruise with his son and he got off the boat

"for about an hour and a half and walked around the city."  AR 87-88.  These isolated events do

not adequately support the ALJ's credibility finding because spending an hour and one-half

**MEMORANDUM DECISION AND ORDER - 16**

walking around and spending time laying down and sitting at a campsite do not demonstrate activity transferrable to work setting.

Finally, the ALJ relied on Petitioner's testimony that he used a recumbent, stationary bike for about a half hour every day.  AR 101.  A claimant need not "'vegetate in a dark room'" in order to be eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981)).  The medical records indicate that Petitioner's pain is sometimes reduced with certain activities, but sometimes he has difficulty recovering from activities.  That Petitioner tried to follow his physicians' suggestions, lose weight, and use low impact exercise to reduce his pain does not mean that half hour of exercise demonstrates he is capable of full-time work.

The Court is mindful that it must defer to a properly supported finding made by the ALJ. *See Batson v. Commissioner of Soc. Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[t]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted).  However, considering the ALJ's decision to discount the opinion of Petitioner's treating physician, and the limited support provided for his credibility finding, the Court finds it necessary to remand this case for further consideration by the ALJ.  On the record of this case, this Court concludes that ALJ's decision is simply not properly supportable.

**MEMORANDUM DECISION AND ORDER - 17**

2.       ALJ's Rejection of Physician Opinions

The ALJ rejected the residual functional capacity opinion of Petitioner's treating

physician and pain management specialist, Dr. Richard Dubose, and the opinion of state agency

medical consultant Dr. Ward E. Dickey.[5]  Drs. Dubose and Dickey both opined that Petitioner is

limited to sedentary work, and the ALJ assessed Petitioner's RFC at the light work level, with

some additional restrictions.

        a.       Dr. Dubose

Dr. Dubose treated Petitioner from 2004 through 2010.  AR 397.  The Ninth Circuit has

held that a treating physician's medical opinion is entitled to special consideration and weight.

*See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  The treating physician's opinion is

given that deference because "he is employed to cure and has a greater opportunity to know and

observe the individual."  *Id*.  Where the treating physician's opinions are not contradicted by

another doctor, it may be rejected only for clear and convincing reasons.  *Lester v. Chater*, 81

F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are contradicted by

another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons,

supported by substantial evidence in the record for doing so.  *Id*.  Regardless, a treating

physician's opinion on the ultimate issue of disability is not conclusive.  *Rodriguez*, 876 F.2d at

762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that

the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is

---

[5]  The ALJ also rejected the opinion of examining physician Dr. Michael O. Sant, but this
is not the focus of the issues raised on appeal.  AR 21-22, 253-57.  However, it is notable that the
ALJ rejected as unpersuasive most of the RFC assessments prepared by treating, examining, and
consulting physicians.

**MEMORANDUM DECISION AND ORDER - 18**

reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are

responsible for making the determination or decision about whether you meet the statutory

definition of disability.").  Therefore, merely concluding that a particular physician is a treating

physician does not mandate the adoption of that physician's opinions.  *See, e.g.*, *Tonapetyan v.

Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes,

and rationale to support treating physician's opinion is sufficient reason for rejecting that

opinion).

Petitioner was a patient of Dr. Dubose's at the Idaho Pain Center form 2004 through the

date of the ALJ's decision, seeing Dr. Dubose almost on a "monthly basis".  AR 397.  Dr.

Dubose submitted a residual functional capacity opinion on January 3, 2008,[6] noting chronic

pain in the low back and both lower extremities, with a "poor" prognosis.  AR 258-59.  Dr.

Dubose noted that Petitioner's pain would frequently interfere with his attention and

concentration, that Petitioner would need to lie or recline for most of an eight hour work day,

and that he would likely miss work more than four times per month because of his impairments

or treatments.

The ALJ's basis for rejecting the opinion of Dr. Dubose was that the opinion was

"inconsistent with the objective medical findings of record, including numerous reports by the

[Petitioner] that his pain is well controlled by medication and the spinal cord stimulator."  AR

22.  As outlined in detail above, Petitioner's self-assessments regarding his pain levels and any

relief he experienced from the stimulator and medications have varied over the years he sought

_____

[6]  This report, authored in 2008, is misdated 2007 in the original, no doubt owing to the
January 3rd date it carries.  AR 83.

**MEMORANDUM DECISION AND ORDER - 19**

treatment from Dr. Dubose.  There are reports that, at times, Petitioner's pain was controlled or could be tolerated, but there are at least an equal number of reports otherwise and, even when Petitioner reported some relief, he still reported pain.

The ALJ also found Dr. Dubose's opinion unpersuasive and accorded it little weight because:

> [T]he possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's request and avoid unnecessary doctor/patient tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as is the current case.

AR 22.  Although Respondent cites to cases discussing whether and when the ALJ may discount the opinion of a doctor who appears to be acting as an advocate, there is nothing but the ALJ's speculation in this record to conclude that Dr. Dubose was acting as an advocate.  This is not a case where the opinion of a physician was "entitled to little weight because he examined [the claimant] only one time and produced a brief report" as in the *Matney* case cited by Respondent. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).  The ALJ also spoke in general terms about the possibility that physicians may provide a disability note to satisfy a patient's request and avoid doctor/patient tension.  AR 22.  However, he did not make a finding that Dr. Dubose was acing simply as an advocate, just that it was a possibility, and one that "always exists."  AR 22.

**MEMORANDUM DECISION AND ORDER - 20**

The Court agrees with Respondent that inconsistencies between a doctor's reports and his treatment notes may be considered in discounting a physician's opinion, *see* Respondent's Brief, p. 14, but here the reports and treatment notes detail almost five years of consistent treatment for pain complaints, treatment which occasionally provided some relief and which more often did not. To the extent the ALJ relies on inconsistencies, the records reveal none sufficient to support his wholesale disregard of Dr. Dubose's opinion, without relying on any contradicting medical opinions in the record..

       *b.*      *Dr. Dickey*

Dr. Dickey, a non-examining medical consultant for Disability Determinations Services, opined that Petitioner should be limited to sedentary work, with a ten pound lifting restriction. AR 299. He also limited the petitioner to standing/walking no more than two hours in an eight-hour day and sitting no more than six hours in an eight-hour day. AR 294. Dr. Dickey did not give an opinion of the amount of time the petitioner would need to lie down during the day. He wrote that "[o]bjective evidence supports a sedentary RFC" and that the "evidence documents a severe impairment." AR 296. He noted that "[p]ain allegations and limitations may not be full[ly] consistent with the objective findings," but "[p]ain was considered in the reduced RFC." AR 298-99. Dr. Dickey's RFC assessment was reaffirmed on December 19, 2007 by Dr. Leslie Arnold, who reviewed all of the evidence in the file. AR 333.

The ALJ found Dr. Dickey's opinion "unpersuasive" and gave it "little weight because the state agency medical consultant did not have an opportunity to examine the claimant, nor is the assessment consistent with the objective medical evidence of record." AR 22. For the same reasons, the ALJ did not rely on Dr. Arnold's affirmation of Dr. Dickey's opinion. AR 23. In

**MEMORANDUM DECISION AND ORDER - 21**

rejecting the RFCs of both Dr. Dubose and Dr. Dickey, the ALJ focused on the lack of objective medical evidence of record to support the limitations.  However, as outlined above, the record contains evidence consistent with and supportive of the limitations assessed by Drs. Dubose and Dickey.

> c.      Conclusion

The ALJ did not point to any contradictory opinions from another doctor as to Petitioner's physical limitations to support the RFC.  Accordingly, Dr. Dubose's opinion may be rejected only for clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ did not support his rejection of Dr. Dubose's opinions with clear and convincing reasons, nor did he provide substantial evidence to support his disagreement with the opinions of Drs. Dickey or Arnold.  The medical evidence was not as equivocal as the ALJ states; rather, it contains a consistent record of differing levels of pain and continued attempts to comply with treatment to reduce and improve pain.

Although this Court's responsibility is not to independently resolve the conflicting opinions and ultimately decide whether Petitioner is disabled, here the ALJ's decision is not properly supported by the record.

## IV.  CONCLUSION

The reasons relied upon by the ALJ to support his credibility finding and disregard of treating and reviewing physician opinions are not sufficient.  Therefore, the Court remands this action for further proceedings to correct the errors.

**MEMORANDUM DECISION AND ORDER - 22**

## V.  ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is hereby GRANTED.

This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings

consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89,

99-100 (1991).



DATED: **September 28, 2012.**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**